# United States Court of Appeals
## For the First Circuit

_____

No. 00-9012

IN RE: PAUL D. WEINSTEIN,

Debtor.

_____

UNITED STATES,

Appellant,

v.

JONATHAN YELLIN,

Trustee, Appellee.

_____

APPEAL FROM A JUDGMENT OF THE UNITED STATES

BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

_____

Before

Lynch and Lipez, <u>Circuit Judges</u>,

and Doumar[*], <u>Senior District Judge</u>.

_____

<u>Thomas J. Clark</u>, Attorney, Tax Division, Department of
Justice, with whom <u>Claire Fallon</u>, Acting Assistant Attorney General,
and <u>Michelle C. France</u> and <u>Donald B. Tobin</u>, Attorneys, were on brief
for appellant.

_____

[*]    Of the Eastern District of Virginia, sitting by
designation.

Craig J. Ziady with whom Riemer & Braunstein LLP was on brief for appellee.

_____

November 30, 2001
_____

**LYNCH, Circuit Judge**.  The Internal Revenue Service appeals from the judgment of this circuit's Bankruptcy Appellate Panel, United States v. Yellin (In re Weinstein), 251 B.R. 174 (B.A.P. 1st Cir. 2000),  affirming the judgment of the bankruptcy court, In re Weinstein, 237 B.R. 4 (Bankr. D. Mass. 1999), in favor of Jonathan D. Yellin, the trustee in this bankruptcy case.  The parties contest the interpretation of 11 U.S.C. §§ 503, 507, and 726; the IRS argues that the Bankruptcy Code requires treatment of interest on postpetition taxes owed by the estate as a first-priority administrative expense, and Yellin responds that the interest should receive a mere fifth priority.  The Panel and the bankruptcy court agreed with Yellin, and in so doing disagreed with all four circuit courts that have previously considered the issue.  To answer the question presented, we must consider the text of the statute, the context of prior caselaw against which Congress wrote the Bankruptcy Code, the legislative history of that Code, and the

-2-

policies and purposes of priority treatment for postpetition taxes. We conclude that the IRS offers the correct interpretation, and reverse.

I.

The legal question presented by this case does not turn on the case's facts, and a brief summary of those facts suffices to illustrate the circumstances under which that question arises. Paul D. Weinstein, the debtor in this case, filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code in 1992. Paul Grella, Weinstein's first trustee, sold assets from the estate, but did not file the required yearly income tax return. Grella later filed income tax returns for the years 1992 through 1995 in 1996. The IRS subsequently determined that the estate owed, in addition to taxes, a total of $9,195.43 in penalties and $5,529.67 in interest. Grella requested that this amount be reduced, and the IRS agreed to forgo the penalties and to reduce the estate's interest obligation.

On November 6, 1997, the IRS filed a request for payment of the remaining interest, which then amounted to $4,593.83. Grella offered to pay this amount at first priority under 11 U.S.C. § 726(a)(1). After Grella resigned as trustee,

-3-

however, he was replaced by the current trustee, Jonathan D. Yellin. Yellin suggested paying the IRS at fifth priority under 11 U.S.C. § 726(a)(5) -- that is, not at all, because the estate's funds were insufficient to pay in full even the unsecured creditors who took second priority under § 726(a)(2). The IRS argued for first priority.

The bankruptcy court ruled in Yellin's favor, and the Panel affirmed. We discuss their arguments below, after placing the problem in context.

## II.

Because Weinstein's is a Chapter 7 bankruptcy, his estate must pay its debts in the order prescribed by § 726. Section 726(a)(1) gives first priority to those types of claims listed in § 507, which in turn gives first priority to those listed in § 503(b).[1] Section 503(b) claims stem from the costs

---

[1] Section 503(b)(1) states:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including --
    (1) (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
        (B) any tax --
        (i) incurred by the estate, except a tax of a kind

-4-

of administering the bankruptcy estate itself. Among these claims are most taxes "incurred by the estate," 11 U.S.C. § 503(b)(1)(B)(i), including fines or penalties related to those taxes, id. § 503(b)(1)(C). No one disputes that the language of § 503(b)(1)(B)(i) refers to postpetition taxes such as those Grella failed to pay. The parties disagree, however, whether that language includes interest on those taxes.

The IRS maintains that § 503(b)(1)(B)(i) does include interest, and relies for this proposition primarily on Nicholas v. United States, 384 U.S. 678 (1966). Nicholas preceded the current Bankruptcy Code, but the Supreme Court has given considerable weight to pre-Code caselaw in interpreting the current code. See Dewsnup v. Timm, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" (quoting Emil v. Hanley, 318 U.S. 515, 521 (1943))). The IRS contends that Nicholas stands for a rule of pre-Code practice and that, as the Court held was true in

---

specified in section 507(a)(8) of this title; [and] . . .
(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph.

11 U.S.C. § 503(b)(1) (2000).

-5-

Dewsnup, nothing in the Code or the legislative history provides a sufficiently strong indication of congressional intent to change that rule.

Yellin, however, argues that this case is governed by § 726(a)(5), which provides that the estate shall pay at fifth priority "interest at the legal rate from the date of the filing of the petition" on claims paid under §§ 726(a)(1)-(4).[2] Because the tax claim at issue here is being paid under § 726(a)(1) -- due to the incorporation of § 507 into § 726(a)(1) and of § 503(b) into § 507 -- Yellin claims that § 726(a)(5) applies and provides a sufficiently clear directive from Congress that the courts may not consider Nicholas, much less legislative

_____

[2]     Section 726(a) states:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed--
   (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title . . .;
   (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection . . .;
   . . .
   (5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection . . . .

11 U.S.C. § 726(a).

-6-

history or policy rationales. This position the bankruptcy court and Bankruptcy Appellate Panel took as well.

The position of the IRS has much support. Four circuits have considered the question whether § 503(b)(1)(B)(i) includes interest on postpetition taxes, and each has concluded that it does. See United States v. Flo-Lizer, Inc. (In re Flo-Lizer, Inc.), 916 F.2d 363 (6th Cir. 1990); United States v. Cranshaw (In re Allied Mechanical Serv., Inc.), 885 F.2d 837 (11th Cir. 1989); United States v. Ledlin (In re Mark Anthony Constr., Inc.), 886 F.2d 1101 (9th Cir. 1989); United States v. Friendship College, Inc. (In re Friendship College, Inc.), 737 F.2d 430 (4th Cir. 1984).[3] The same is true of a leading treatise in bankruptcy. See 4 Collier on Bankruptcy ¶ 503.08, at 503-56 (L. King et al. eds., 15th rev. ed. 2001) ("[T]he courts generally and properly treat interest on postpetition

---

[3] This circuit has issued a decision denying interest on postpetition taxes in the context of a railroad reorganization. See In re Boston and Maine Corp., 719 F.2d 493, 498-502 (1st Cir. 1983). In that case, however, the court distinguished Nicholas by relying entirely on the unique characteristics of a railroad reorganization -- specifically, on the district court's power to defer the payment of taxes. Id. at 498, 500. No such considerations relate to this case; as we discuss, it is crucial to the outcome of this case that Grella was required to pay taxes in a timely fashion.

taxes as an administrative expense."). These cases did not, however, arise entirely under Chapter 7. See Flo-Lizer, 916 F.2d at 364 (arising wholly under Chapter 11); Cranshaw, 885 F.2d at 837-38 (dealing with interest accrued during a Chapter 11 phase after conversion to Chapter 7); Ledlin, 886 F.2d at 1102 (same); Friendship College, 737 F.2d at 430-31 (same). Moreover, none addressed the relevance or irrelevance of § 726(a)(5) -- perhaps because of their less direct relationship to Chapter 7. Several bankruptcy courts of this circuit have dealt with the problem prior to this case, and have disagreed on the proper outcome. Compare In re Gould & Eberhardt Gear Mach. Corp., 80 B.R. 614 (D. Mass. 1987) (according first-priority status to interest on postpetition taxes), appeal dismissed, 852 F.2d 26 (1st Cir. 1988), and In re Goodrich, 215 B.R. 638, 642 (Bankr. D. Mass. 1997) (same), with In re Hospitality Assocs., 212 B.R. 188 (Bankr. D.N.H. 1997) (relegating such interest to fifth priority).[4]

---

[4] Many district and bankruptcy courts in other circuits have also addressed the question presented by this case. See generally E.L. Black, Annotation, What Are "Administrative Expenses" Under § 503(b) of Bankruptcy Code (11 U.S.C.A. § 503(b)) Granted First Priority for Payment Pursuant to § 507(a)(1) of Code (11 U.S.C.A. § 507(a)(1)), 140 A.L.R Fed. 1,

III.

A question of the interpretation of the Bankruptcy
Code, like any other question of statutory interpretation, is a
question of law that we review de novo.  Travelers Ins. Co. v.
Cambridge Meridian Group, Inc. (In re Erin Food Servs., Inc.),
980 F.2d 792, 799 (1st Cir. 1992).

A.

We consider first the text of the statute.  If
sufficiently clear, that text assumes overriding importance.
Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530
U.S. 1, 6, 10 (2000); United States v. Ron Pair Enters., Inc.,
489 U.S. 235, 241 (1989) ("[W]here . . . the statute's language
is plain, 'the sole function of the courts is to enforce it
according to its terms.'"  (quoting Caminetti v. United States,
242 U.S. 470, 485 (1917))).  The bankruptcy court and the Panel
felt that § 726(a)(5) was clear in precisely this way, because
it refers expressly to postpetition interest and assigns that
interest fifth priority.  We disagree with their analysis.

---

at § 42 (1997) (collecting cases).

Section 503(b)(1), examined in isolation, does not mention interest, either to include or to exclude it from the definition of a "tax." Similarly, § 507 does not mention interest. Accordingly, these provisions alone do not resolve the question whether interest on postpetition taxes should receive the same priority status as the taxes themselves. If these were the only relevant provisions, we could conclude easily that Congress had not spoken to the question and turn to auxiliary sources of statutory meaning. This approach was taken by the Ninth Circuit in Ledlin, the most thorough of the prior circuit court opinions addressing the priority treatment of interest on postpetition taxes. 886 F.2d at 1107 ("[W]e avoid the 'treacherous' course of inferring from Congress' silence any affirmative intentions." (quoting NLRB v. Plasterers' Local Union No. 79, 404 U.S. 116, 129 (1971))).

A fair review of the Panel's decision, however, requires us to discuss the different provisions within § 726. Section 726(a)(1) does not mention interest, but § 726(a)(5) does -- specifically, "interest at the legal rate from the date of the filing of the petition" -- and assigns it a fifth priority. Section 726(a)(5) could control the outcome of this

-10-

case in one of two ways.  First, it might be that although § 503(b)(1)(B)(i) includes interest as a general matter, § 726(a)(5) overrides § 503(b)(1)(B)(i) in the specific context of Chapter 7 and directs that interest on postpetition taxes, like all other interest, be paid at fifth priority rather than at first priority.  This reading would apply the principle that in statutory interpretation courts give specific language precedence over general language.  See, e.g., Varity Corp. v. Howe, 516 U.S. 489, 511 (1996) (describing this approach as a "warning against applying a general provision when doing so would undermine limitations created by a more specific provision").

Second, it might be that although § 503(b)(1)(B)(i) read in isolation would include interest, § 726(a)(5) provides textual evidence that § 503(b)(1)(B)(i) should not, in fact, be read to include interest, because the two provisions are meant to work in concert -- at least in Chapter 7 cases -- and because Congress's mention of interest in the one demonstrates that Congress mentioned interest when interest was relevant.  This reading would apply the principle that courts will seldom imply mention of an item in one statutory provision if another

-11-

statutory provision expressly mentions the same item.  See,
e.g., City of Chicago v. Envtl. Def. Fund, 511 U.S. 328, 338
(1994) ("'[I]t is generally presumed that Congress acts
intentionally and purposely' when it 'includes particular
language in one section of a statute but omits it in another.'"
(quoting Keene Corp. v. United States, 508 U.S. 200, 208 (1993))
(alternation in original)).

Neither of these readings, however, finds such strong
support in the statute's text as to preclude use of nontextual
means of interpretation.  The first reading, under which
§ 726(a)(5) overrides § 503(b)(1)(B)(i) in Chapter 7, supposes
a conflict between two provisions of the statute -- a conflict
with which neither provision deals expressly.  Such a conflict
provides a reason to move beyond the text and to examine a
statute's legislative history and apparent purpose.  Nor is it
clear which provision is the more specific: § 503(b)(1)(B)(i)
applies to all bankruptcies, and § 726(a)(5) only to Chapter 7;
but § 726(a)(5) applies to many different claims against the
bankruptcy estate,[5] and § 503(b)(1)(B)(i) only to a specific type

_____

[5]      We emphasize that our reading of § 726(a)(5) in this case
leaves intact many unambiguous applications of its language.  For one
example, prepetition taxes do not include postpetition interest as a

-12-

of administrative expense. The second reading, under which § 726(a)(5) influences the proper reading of § 503(b)(1)(B)(i) -- a reading which would then apply to all bankruptcies and not merely to Chapter 7 -- relies on too remote an inference to be fairly called a matter of plain meaning. Section 503(b), after all, is incorporated in § 726(a) only indirectly through § 507; it is not inevitable that a drafter had or that a reader will have one section's precise language firmly in mind while contemplating the other. Section 726(a)(5)'s express inclusion of interest does provide some legitimate evidence that § 503(b)(1)(B)(i) should not be read to contain an implied inclusion; but that evidence is not so strong that we can end our analysis here.

B.

Accordingly, we consider second the context of the statute in bankruptcy caselaw. A large body of bankruptcy caselaw predates the 1978 Bankruptcy Code, and the Supreme Court in interpreting that Code has assumed that Congress meant to

part of the claim, see Cal. State Bd. of Equalization v. Taxel (In re Del Mission Ltd.), 998 F.2d 756, 757-58 (9th Cir. 1993), although they too are incorporated into § 726(a)(1) through § 507(a)(8). Postpetition interest on those taxes would therefore be payable, if at all, only at fifth priority under § 726(a)(5).

preserve some measure of continuity with the earlier cases. Dewsnup, 502 U.S. at 419-20; Kelly v. Robinson, 479 U.S. 36, 44-47 (1986).  We have followed the Court's lead quite recently. See IRS v. Cousins (In re Cousins), 209 F.3d 38, 41 (1st Cir. 2000) (holding that the rule of Bruning v. United States, 376 U.S. 358 (1964), survived the Code's enactment).

The 1966 case of Nicholas v. United States, 384 U.S. 678, dominates the context of the statutory provisions in question.  That case involved facts more complex than those we face today.  In Nicholas, the debtor went through subsequent phases of arrangement (the procedure now governed by Chapter 11 of the Code) and bankruptcy (now governed by Chapter 7).  During the arrangement phase, the trustee in Nicholas failed to file tax returns or pay taxes due.  During the bankruptcy phase, the IRS requested payment of the underlying taxes together with penalties and interest accumulated from the time the taxes were due to the time of the request -- a period which encompassed part of the arrangement phase and all of the bankruptcy phase. Nicholas,  384 U.S. at 679-81.

The Court held that the government should receive payment for interest that accrued on the tax claim during the

-14-

period from the time the taxes were due to the time that the arrangement phase ended and the bankruptcy phase began. Id. at 689-90. On this point eight Justices agreed; Justice Harlan did not, and commented that although the case was close he would prefer to see the government receive payment for interest over the entire period covered by its request, including the bankruptcy phase. Id. at 696 (Harlan, J., concurring in part and dissenting in part). Thus, all nine Justices agreed[6] that a postpetition tax claim included postpetition interest within the same phase of a bankruptcy proceeding, which is the less sophisticated point at stake in the present case. This view accords with language in the Court's caselaw prior to Nicholas itself. See Bruning v. United States, 376 U.S. 358, 360 (1964) ("In most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing

_____

[6]    Justice White, joined by Justices Douglas and Fortas, dissented on another point but joined the part of the Court's opinion relevant here. Id. at 696 (White, J., concurring in part and dissenting in part).

-15-

debt. Interest on a tax debt would seem to fit that description.").[7]

This point has weighed heavily with several of the other circuit courts to reach the present question before us. See Cranshaw, 885 F.2d at 839 (noting that, in light of Nicholas, "Congress may have reasoned that it was unnecessary to specify that post-petition interest would receive administrative priority"); Ledlin, 886 F.2d at 1107. Congress, in writing the Bankruptcy Code, would have taken into account that the courts would preserve the rule of Nicholas unless otherwise directed. Although § 726(a)(5) could potentially be read to provide such a directive, the import of that section is -- as discussed above -- unclear when read in full context. Therefore, we best follow the intended statutory scheme by treating postpetition interest as part of a postpetition tax claim. Because the postpetition

---

[7] Bruning concerned a prepetition tax debt -- specifically, one exempted from discharge in bankruptcy by a provision of the old Bankruptcy Act -- and is thus relevant here only for its language, rather than for its holding. Prepetition tax debts, like most prepetition debts, generally cease to accrue interest when a bankruptcy petition is filed. See generally Cousins, 209 F.3d at 40-42 (stating the rule in the course of discussing the exception under Bruning for nondischargeable debts).

tax claim itself receives first priority as an administrative expense, so should the interest on that claim. This argument is persuasive, but not conclusive, and so we continue our analysis to consider other sources of statutory meaning.

C.

We consider third the legislative history of the statute. The 1978 Bankruptcy Code emerged from the reconciliation of bills passed by the House, H.R. 8200, 95th Cong. (1977), and the Senate, S. 2266, 95th Cong. (1978). The House and Senate Judiciary Committees prepared reports regarding their bills, H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.S.C.A.N. 5963; S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.S.C.A.N. 5787, but the only legislative history explaining the results of the reconciliation is the statements of the relevant subcommittee leaders in the Congressional Record, see 124 Cong. Rec. H11,089 (1978) (statement of Rep. Edwards), reprinted in 1978 U.S.C.C.A.N. 6436 [hereinafter Edwards statement]; id. at S17,406 (statement of Sen. DeConcini), reprinted in 1978 U.S.C.C.A.N. 6505 [hereinafter DeConcini statement]; see also Begier v. IRS, 496 U.S. 53, 64 n.5 (1990) ("Because of the absence of a conference and the key roles

-17-

played by Representative Edwards and his counterpart floor manager Senator DeConcini, we have treated their floor statements on the Bankruptcy Reform Act of 1978 as persuasive evidence of congressional intent.").

The Senate bill contained language that would have expressly given first priority treatment to interest on postpetition taxes.  S. 2266, sec. 101, § 503(b)(1)(B) (1978) (giving priority to "taxes, including interest thereon"), reprinted in C Collier, supra, at App. Pt. 4-1728, 4-1776.  The House bill did not.  H.R. 8200, sec. 101, § 503(b)(1) (1977), reprinted in B Collier, supra, at App. Pt. 4-874, 4-916.  As discussed above, the law as enacted contains no such express reference.  The leaders explained that the language for § 503 represents a compromise.  Edwards statement, supra, at 6450; DeConcini statement, supra, at 6519.  One might infer from this sequence of events that Congress decided to exclude interest from the first priority, and indeed some courts have drawn this inference.  E.g., In re Stack Steel & Supply Co., 28 B.R. 151, 156 (Bankr. W.D. Wa. 1983).

It is not clear, however, whether the House language was adopted because it represented a different policy choice or

because the conference committee viewed a specific reference to interest as unnecessary. With regard to § 726(a)(6), the leaders stated that language referring to prepetition interest on prepetition claims had been removed because the general definition of "claim" in what would become 11 U.S.C. § 101(4) (since renumbered § 101(5)) was sufficiently broad to include interest. Edwards statement, supra, at 6459; DeConcini statement, supra, at 6528.[8]

Other arguments have been made based on the Code's legislative history. The IRS calls to our attention the citation in the House Report of a pre-Code bankruptcy case decided by the Ninth Circuit that allowed postpetition interest as part of a postpetition tax claim. H.R. Rep. No. 95-595, at 193 & n.123 (citing Sec.-First Nat'l Bank v. United States, 153 F.2d 563 (9th Cir. 1946)), reprinted in 1978 U.S.C.C.A.N. at 6153-54. But that case does not discuss or reason out the

---

[8] We explained earlier that the indirect relationship between §§ 503 and 726 tends to weaken inferences based on the textual relationship of the two. This logic applies equally, of course, to the leaders' statements about the meaning of an omission in § 726 when used to assess the meaning of an omission in § 503. The relative weakness of the inference is one reason why we do not rely primarily on legislative history in this opinion.

question of interest, and so we hesitate to infer that its inclusion in the report carries much meaning. All in all, we think the legislative history of the relevant provisions are inconclusive, but tend to support the IRS's position due to the sponsors' statements regarding § 726.

D.

We consider fourth, and finally, the policies underlying the statute. A court must not, of course, impose its own views of proper bankruptcy policy in place of those of the legislature. However, an understanding of the congressional policies underlying a statute, including the Bankruptcy Code, can help to reconcile otherwise indeterminate parts of the statutory text.

This case revolves around a dispute between creditors of the same debtor. Bankruptcy law generally follows the principle that creditors with similar relationships to the debtor should receive similar treatment. See, e.g., In re Hemingway Transp., Inc. (Juniper Dev. Group v. Kahn), 993 F.2d 915, 923 (1st Cir. 1993) (discussing "the fundamental Code policy fostering equitable distribution among all creditors of

the same class").  This approach is important to prevent both the waste and confusion that would result from similarly situated creditors jockeying for priority and the unfairness -- with attendant disruption of reasonable expectations based on the norms of commercial interaction -- that would result from, for example, a race to obtain judgments against an ailing debtor's remaining assets.  Such considerations may have influenced the decisions from which the government now appeals, although it is clear that those courts rested their judgments primarily on the statute's text.  The bankruptcy court mentioned in passing that "the goal of equality of distribution in bankruptcy cases" favored the result it reached, Weinstein, 237 B.R. at 7; and the Panel noted that "the government is not unlike other creditors -- it wants to be paid, in full, with interest, sooner rather than later," Yellin, 251 B.R. at 184 n.16.

These concerns of equity have little significance in the present case.  The concept of priority, integral to relations between creditors in bankruptcy, carries with it the idea that only those creditors who are similarly situated should receive similar treatment from the bankruptcy court.  The

Bankruptcy Code does not generally presume that a taxing authority is situated similarly to an unsecured private creditor. See 11 U.S.C. § 507(a)(8) (according priority to various types of tax claims). Even assuming the government's interest in pursuing a prepetition tax claim to be similar to that of an unsecured prepetition creditor, as in some respects it may be, the interest in a postpetition tax claim is different. The government was entitled to claim payment of the estate's taxes promptly in 1993 and 1995 for the 1992 and 1994 tax years; prepetition creditors were not, after the bankruptcy filing, entitled to claim such prompt payment. The other creditors will therefore suffer no inequity if the government now claims the present value of prompt payment -- payment with interest.

More relevant to this case than is the need for equity among creditors is the need to ensure that trustees pay postpetition tax claims promptly. To be sure, penalties exist to deter intentional misconduct. Some failures will, however, occur, whether intentional or unintentional. Penalties are limited by a statutory cap and can reach the maximum amount quite quickly if, as in this case, no return is timely filed.

-22-

See I.R.C. § 6651(a) (1994 & Supp. II 1996). Once the cap is reached, whether the penalty is exacted or abated a trustee will have little incentive to pay promptly except that provided by postpetition interest.[9]

These observations lead to a problem with the interpretation of the statute advanced by the bankruptcy court and the Panel. The statute expressly provides that postpetition tax penalties, which would not even arguably be a part of the tax claim under Nicholas, do receive priority treatment as administrative expenses. The reasons for giving priority treatment to interest on such taxes are at least as strong as, and probably stronger than, those for giving priority treatment to penalties. There are two such reasons, each of which applies at least somewhat both to interest and to penalties: to supply an incentive for trustees to pay taxes promptly, and to

---

[9]    We note that in an earlier phase of this case Grella argued before the bankruptcy court that his decision not to pay the taxes in a timely fashion was justified by the  relative expense of filing -- we assume he referred to accountant's fees -- and that it made more sense for the estate to pay its taxes later, in a lump sum, even after taking penalties and interest into account. Whether this explanation was his rationale at the time or a rationalization after the fact, it demonstrates that our concern regarding the incentives facing a trustee is not wholly far-fetched.

compensate the taxing authority for delayed payment.  As we have discussed, however, penalties may have little effect in cases of unintentional delay, where a trustee discovers tax liability only after the applicable penalties have reached the statutory cap; interest lacks this defect.  As to compensation for delayed payment, interest is the general measure of the cost of delay, and penalties are not.  We therefore think it relatively unlikely that Congress chose to give priority treatment to penalties, but not to interest.  See Ledlin, 886 F.2d at 1108; Cranshaw, 885 F.2d at 839.[10]

## IV.

After holding the text of the Bankruptcy Code ambiguous as to the proper result in this case, we have considered inferences to be drawn from the text of the statute, its

---

[10]     The Panel noted this difficulty but addressed it by referring to the Supreme Court's recent decision in Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000). See id. at 13 ("[W]e do not sit to assess the relative merits of different approaches to various bankruptcy problems.  It suffices that the natural reading of the text produces the result we announce."), quoted in Yellin, 251 B.R. at 182.  That approach is sound only if the text has but one natural reading. As discussed above, we disagree with the bankruptcy court and the Panel on this key point. Moreover, the Court in Hartford Underwriters did indeed discuss the policy implications of its holding, although it did not consider them conclusive. 530 U.S. at 11-13.

historical context, its legislative history, and the underlying

policies that animate its provisions. Of these sources of

meaning we find most useful the Code's historical context and

its underlying policies, both of which run in favor of the

government's position and against that of Yellin, the Panel, and

the bankruptcy court. We note as well the additional weight of

the decisions rendered by four other circuits on the question

presented.

We conclude that a proper reading of § 503(b)(1)(B)(i)

includes interest on postpetition taxes incurred by a bankruptcy

estate. Accordingly, the IRS should receive payment of the

interest on the estate's taxes as a first-priority

administrative expense under § 726(a)(1).[11] The judgment of the

---

[11] Yellin offers an additional ground in defense of the Panel's judgment: that the IRS failed to inform Grella as required by 11 U.S.C. § 505(b) that it had selected his return for examination. Section 505(b) provides in relevant part that

> [a] trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability

-25-

Bankruptcy Appellate Panel is <u>reversed</u> and the case <u>remanded</u> for proceedings consistent with this opinion.

_____

        for such tax --
                (1) upon payment of the tax shown on such return, if --
                        (A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or (B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits . . . .

<u>Id.</u>  According to the bankruptcy court, Grella submitted a request under § 505(b) on July 9, 1996, received a determination of the estate's tax liability as to tax year 1992 on August 19, and received a determination as to tax year 1994 on September 2. <u>Weinstein</u>, 237 B.R. at 5.  Both arrived within the sixty-day period specified by § 505(b)(1)(A), and we perceive no cause for him to complain.