THOMPSON, Circuit Judge,
dissenting.
Our nation’s bankruptcy system was built on the principle that sometimes, honest people fall on hard times. While the bankruptcy code has naturally gone through revisions and updates since its inception, that foundational philosophy has always laid at its root.
In my view, the majority is unfairly dismissive of the debtors’ logical interpretation of the statutory provisions at issue. It simultaneously takes too academic and literal of an approach to its reading of one of the code’s definitional provisions, leading to a result that defies common sense, while also conveniently ignoring the plain meaning of other words in the very same paragraph, in order to reach a certain outcome. It ignores the mandates of statutory construction we are obligated to follow, years of lines of caselaw upon which debtors had been relying, and the clearly stated policy reasons for Congress’s imposing these statutory provisions in the first place.
Needless to say, I dissent.
The Canons of Construction
In our de novo review, the rules we follow to interpret a statute — including bankruptcy statutes — are well established. First, we “look [ ] to the specific language at issue.” In re Rudler, 576 F.3d 37, 44 (1st Cir.2009). “If the statute’s language is plain, the sole function of the courts ... is to enforce it according to its terms.” Id. at 44-45 (citations and quotations omitted). In so doing, however, we only apply plain meaning if the statutory language is not ambiguous and would not “lead to absurd results.” Id. (citations and quotations omitted). Thus, in this case we must initially decide whether we can enforce 11 U.S.C. § 523(a)(l)(B)(ii)[13] — the specific statutory provision at issue —“according to its terms,” based on an assessment that the “disposition required by the text is not absurd,” id. at 44 (citations and quotations omitted), and that the statute cannot be “read in more than one way,” In re Thinking Machines Corp., 67 F.3d 1021, 1025 (1st Cir.1995) (quoting United States v. Gibbens, 25 F.3d 28, 34 (1st Cir.1994)) (“A statute is ambiguous if it can be read in more than one way.”).
The majority concludes that the hanging paragraph, which Congress added to the bankruptcy statute in order to define what a “tax return” is for purposes of Subsection (ii),[14] unambiguously dictates that “a return filed after the due date is a return not filed as required,” and thus, that debtors who file their Massachusetts taxes late can never benefit from Subsection (ii). As I will explain, I disagree that the hanging paragraph — when read in concert with *12 Subsection (ii) — unequivocally demands that conclusion. To the contrary, the majority’s interpretation of the hanging paragraph leads to an absurd result that cannot be reconciled simply with a strictly literal reading of the statute.
Plain Meaning
The statute at issue provides that a debtor may not discharge a tax debt if “a return ... if required — (i) was not filed or given; or (ii) was filed or given after the date on which such return ... was last due, under applicable law or under any extension, and after two years before the date of the filing of the [bankruptcy] petition[.]”[15] 11 U.S.C. § 523(a)(l)(B)(i)-(ii).
In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act, making numerous and significant changes to the bankruptcy code. As part of those 2005 amendments, Congress added the “hanging paragraph” to the end of 11 U.S.C. § 523(a), clarifying that for purposes of that subsection, a “ ‘return’ means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).” Significant to this appeal, Congress did not change Subsection (ii) during the 2005 amendments.
The majority hones in on the hanging paragraph’s added clarification that returns must comply with a state’s “applicable filing requirements” to be dischargea-ble. The majority concludes that the text of the hanging paragraph unambiguously states that if a return does not comply with all the state law tax return filing requirements (including the filing deadline),[16] then the taxes cannot be discharged.
The majority’s logic suffers from several flaws, which I address in turn.
First, it is not obvious to me that under Massachusetts tax law, filing a return late necessarily means that a debtor did not comply with “applicable filing requirements,” such that his return would not “satisf[y] the requirements of applicable nonbankruptcy law.” As the majority concedes, a tardy return will still be accepted by the state, and the debtor’s tax liability will still be assessed. See Mass. Gen. L. c. 62C, § 26(a) (“Taxes shall be deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of.this chapter and on any amendment, correction or supplement thereof, or at the amount properly due, whichever is less, and at the time when the return is filed or required to be filed, whichever occurs later.”). While late-filed returns are subject to a one-percent penalty, Mass. Gen. L. c. 62C, § 33(a),[17] even the fine is waivable on a showing of good faith:
*13 If it is shown that any failure to file a return or to pay a tax in a timely manner is due to reasonable cause and not due to willful neglect, any penalty or addition to tax under this section may be waived by the commissioner, or if such penalty or addition to tax has been assessed, it may be abated by the commissioner, in whole or in part.
Mass. Gen. L. c. 62C, § 33(f). I do not see how we can conclude that a late-filed return never satisfies the requirements of Massachusetts tax law if the Commonwealth not only accepts the return, but is even willing to waive the already relatively conservative penalty for filing it late.
More importantly though, even if we assume, as the majority does, that timely filing is generally a necessary component of a “return” under Massachusetts tax law, we still cannot draw the majority’s ultimate conclusion that late filers can never discharge their Massachusetts tax debts under 11 U.S.C. § 523(a). Subsection (ii) — which Congress chose not to alter during its 2005 amendments — continues to provide a discharge exception for people who filed their taxes late, so long as those debtors did not file within the two years just prior to filing for bankruptcy. See In re Weinstein, 272 F.3d 39, 43 (1st Cir.2001) (noting that when two statutory provisions are “meant to work in concert,” to discern the plain meaning of the provision at issue, we must analyze both, as one statutory provision cannot be read in isolation). As the debtors appropriately urge, there would be no point in leaving in Subsection (ii)-the specific exception that deals with late filers-if Congress meant for the hanging paragraph to penalize everyone who misses filing deadlines. As the majority concedes, we should not, when we can avoid it, construe statutes in a way that allows a “clause, sentence, or word” to be “superfluous, void, or insignificant.” TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001); see also Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (“[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.”) (citation and quotations omitted).
So how do we reconcile this discrepancy (i.e., ambiguity) that arises within the statute? The correct answer is to assess what the legislature likely meant when it wrote the statute — a step the majority incorrectly assumes it can skip, based on its half-reading of the statutory provisions it was required to consider. See In re Weinstein, 272 F.3d at 44 (noting that a “conflict between two provisions of [a] statute — a conflict with which neither provision deals expressly ... provides a reason to move beyond the text and to examine a statute’s legislative history and apparent purpose”). Instead of taking on its required task, the majority, in an attempt to resolve this matter solely on the plain text, glosses over the ambiguity by concluding that Subsection (ii) is not a superfluous clause because one type of person would still benefit from it — the people who filed a return pursuant to 26 U.S.C. § 6020(a) (or a comparable state or local law).[18]
*14 As the majority notes, the hanging paragraph provides:
[“Return”] includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, ... but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law. 11 U.S.C. § 523(a)(*). So, the majority concludes, Subsection (ii) retains some usefulness because § 6020(a) returns (even if they are filed late), can still be discharged under Subsection (ii).
The majority’s logic on this point is off for a number of reasons, two of which relate to plain language interpretation.
For one, the text of the hanging paragraph does not, as the majority concludes, dictate that § 6020(a) returns are the only type of late-filed returns that count as “returns.” The hanging paragraph provides that a return “includes a return prepared pursuant to section 6020(a).” (Emphasis added). The majority asks us to assume that Congress, in its use of the word “includes,” intended for the exception to apply only to § 6020(a)-type returns.
I am perplexed as to how the majority reaches this contrived extrapolation. Congress’s use of the word “includes” connotes that § 6020(a) returns and their state or local law equivalents are mere examples of returns that would still comply with “applicable filing requirements,” despite the fact that the taxpayer did not meet the filing deadline.[19] If Congress intended the outcome espoused by the majority, it would have used different language (e.g., “is limited to”) — not the word “includes.”[20]
In a similar vein, the hanging paragraph also denotes that a “return” “does not include a return made pursuant to section 6020(b) of the Internal Revenue Code ... or a similar State or local law.”[21] Applying the majority’s (incorrect) definition of the word “includes,” then, means that conversely, a § 6020(b) return, (or its state or local law equivalent) would be the only type of return that is not a return. But as the bankruptcy court below put it, “[i]f all late-filed returns except § 6020(a) returns are not returns[,] there is no need to state *15 that § 6020(b) returns are not returns.” The majority cursorily writes off this curiosity as a mere “redundancy” in the statute, failing to substantively address why the absurd conclusion we must draw from its reading of the statute does not require consideration of what Congress actually meant when it added the § 6020 language to the statute.
Second, allowing § 6020(a) returns, but not other late-filed returns, to be dis-chargeable leads to another preposterous result. Section 6020(a) returns result from a taxpayer’s failure to file a federal tax return. Under the majority’s formulation, then, the scofflaw who sits on his hands at tax time, doesn’t bother to file a return, and then, after getting caught, cooperates with the authorities and lets the government file the substitute return for him, would be the only late filer who would be allowed to discharge his tax debt. The person who files his return one day late— which the state then accepts — would not be permitted to discharge, regardless of the reason for the tardiness.
The majority responds that § 6020(a) “is a tool for the IRS, invoked solely at its discretion, when it decides obtaining help from the late filing taxpayer is to. the IRS’s advantage.” And so, the majority contends, “[t]hat Congress left the IRS a carrot to offer a taxpayer in such infrequent cases does not mean that it was absurd for Congress not to extend this carrot categorically to large numbers of late filers.” But the Massachusetts taxing authority, like the IRS, also has the discretion to accept late-filed materials from a taxpayer (without imposing a penalty), presumably because it, too, would prefer not to start from scratch. Further, the majority offers no authority to support its assumption that Congress was concerned about a rash of people running to the courthouse to discharge their tax debts. A theme I harp on throughout this dissent, we cannot put words in Congress’s mouth. Finally, if Congress did provide some indication that it was seeking to prevent “large numbers” of late filers from attempting to discharge, the relevant statistic to look at would be how many late filers — of the § 6020(a) variety or otherwise — would actually seek relief from Subsection (ii), were it available to them, as opposed to how many people, theoretically, file their taxes late.
Given the absurdity of the majority’s outcome, and the other textual ambiguities I described above, I disagree with my colleagues that we can avoid delving into legislative intent. I tackle that analysis next.
Legislative Intent
In dicta, the majority rejects the debtors’ arguments regarding the legislative intent behind Subsection (ii) and the hanging paragraph. I disagree with this portion of the majority’s analysis, as well as its ultimate disposition.

The Caselaw

In trying to discern legislative intent, we look to the historical context of the statute (i.e., prior caselaw), the legislative history of the statutory provision, and the policy underlying the statute. In re Weinstein, 272 F.3d at 44-46. So first, we must “consider ... the context of the statute in bankruptcy caselaw.” Id. This task requires a brief recap of the history of Subsection (ii) and the addition of the hanging paragraph.
Prior to 2005, the bankruptcy code did not define “return” for purposes of Subsection (ii). Many courts, left to their own devices to figure out what constituted a “return,” ended up adopting what’s been coined as the “Beard test,” a four-part standard formulated by the Tax Court for *16 determining whether a document filed with the IRS qualified as a federal tax return. Under the Beard inquiry, a document qualified as a tax return if: (1) it purported to be a return; (2) was signed under penalty of perjury; (3) contained information sufficient to determine tax liability; and (4) was an honest and reasonable attempt to satisfy the tax law requirements. Beard v. Commissioner, 82 T.C. 766 (1984), aff'd per curiam, 793 F.2d 139 (6th Cir.1986). See also In re Colsen, 446 F.3d 836, 839 (8th Cir.2006); In re Payne, 431 F.3d 1055, 1057 (7th Cir.2005); In re Moroney, 352 F.3d 902, 905 (4th Cir.2003); In re Hatton, 220 F.3d 1057, 1060-61 (9th Cir.2000); In re Hindenlang, 164 F.3d 1029, 1033-34 (6th Cir.1999) (all adopting Beard test).[22]
Many courts ended up grappling with the fourth prong. Some tried to figure out whether filing a return late counted as an “honest and reasonable attempt” to satisfy tax requirements. See, e.g., In re Payne, 431 F.3d at 1059; In re Hindenlang, 164 F.3d at 1034. Those decisions often turned on whether a return made after the government had already assessed tax liability defeated the main purpose of the filing deadline, which one court described as “spar[ing] the tax authorities the burden of trying to reconstruct a taxpayer’s income and income-tax liability without any help from him.” In re Payne, 431 F.3d at 1057. See also In re Moroney, 352 F.3d at 906 (holding that the belated acceptance of responsibility for tax liability does not constitute an honest and reasonable attempt to comply with tax laws, and that whether the eventual effort had an effect on tax liability was irrelevant); In re Hatton, 220 F.3d at 1061 (finding that belated cooperation with IRS to settle tax liabilities was not an honest and reasonable attempt to comply with tax law, and tax liability was therefore not excepted from discharge under § 523); In re Hindenlang, 164 F.3d at 1034 (applying the fourth prong of Beard, holding that a “Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code”). Other courts instead struggled with whether the “honest and reasonable” inquiry was limited to an examination of whether, as a factual matter, the tax forms themselves— regardless of when they were eventually filed — were filled out in good faith and with accurate information. See, e.g., In re Colsen, 446 F.3d at 840-41.
Presumably aware of this confusion that was ensuing in the courts, in 2005, Congress added the hanging paragraph, clarifying specifically that substitute returns— even though they were not prepared at the hand of the taxpayer and were filed late— could qualify as dischargeable under 11 U.S.C. § 523(a), so long as the taxpayer cooperated with the government in preparing the return, and did not file a false or fraudulent one. While Congress also injected the language requiring returns to meet “applicable filing requirements,” despite the discord among the courts, it did not specifically address whether late-filed returns in particular should be considered “returns” under the revised statutory scheme.
Since 2005, disagreement has continued to persist among the courts about how to apply the law, at least as it pertains to late-filed returns. Only two of our sister courts have answered the specific question *17 before us, and both have reached the same conclusion as the majority here. See McCoy v. Miss. State Tax Comm’n (In re McCoy), 666 F.3d 924, 932 (5th Cir.2012); In re Mallo, 774 F.3d 1313, 1327-28 (10th Cir.2014). But as we have said before, “[t]he numbers favoring a rule do not necessarily mean that the rule is the best one.” In re Atlas IT Exp. Corp., 761 F.3d 177, 182 (1st Cir.2014). Numerous lower courts — including two of the courts involved in the instant appeal — have applied either a different reasoning or have reached a different outcome from the one espoused by the majority. See, e.g., In re Gonzalez, 506 B.R. 317, 318 (B.A.P. 1st Cir.2014) (affirming bankruptcy court’s holding that Massachusetts taxes were dis-chargeable, even though “corresponding tax returns were filed late”); In re Martin, 508 B.R. 717, 736 (Bankr.E.D.Cal.2014) (holding that “requirements of applicable nonbankruptcy law (including applicable filing requirements) do not include a temporal restriction”) (quotations omitted). Some courts, including the lower court in Mallo, have continued to apply various versions of the Beard test. See, e.g., In re Mallo, 498 B.R. 268, 281 (D.Colo.2013); In re Rhodes, 498 B.R. 357, 360 (Bankr.N.D.Ga.2013).
As the Supreme Court has articulated, “[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate.” Dewsnup v. Timm, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (quotations omitted). Therefore, we should be “reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.” Id. Given the widespread disagreement among the courts prior to and after 2005, as well as ubiquitous application of various versions of the Beard test’s “honest and reasonable attempt” requirement, I do not see how — absent a clear congressional mandate — we can (or should) spring upon debtors • the majority’s draconian rule-of-law. This very appeal, which involves four different debtors and the decisions of four different lower courts reaching two opposing outcomes, illustrates that the caselaw is far from settled, and that the courts were not generally applying a per se restriction like the one the majority has created today.

Policy

Given the lack of legislative history on the hanging paragraph, it is also appropriate to look to the public policy behind the bankruptcy code to try to determine Congress’s intent. See In re Weinstein, 272 F.3d at 46 (noting that while we “must not, of course, impose [our] own views of proper bankruptcy policy in place of those of the legislature^] ... an understanding of the congressional policies underlying a statute, including the Bankruptcy Code, can help to reconcile otherwise indeterminate parts of the statutory text”).
The primary purpose of the bankruptcy, code has always been to “relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.” Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (citation and quotations omitted); Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (“The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debt- or.”) (citations and quotation omitted). As the Supreme Court reiterated fairly recently (and several years after the 2005 amendments were passed), a “fresh start” is a “fundamental bankruptcy concept.” *18 Schwab v. Reilly, 560 U.S. 770, 791, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010) (citations and quotations omitted). Despite the majority’s contentions, Congress made no indication that the 2005 amendments were intended to change those goals. Rather, as President George W. Bush reiterated upon signing the bill, the purpose of our bankruptcy system is to “give those who cannot pay their debts a fresh start.” Presidential Statement on Signing the Bankruptcy Abuse Prevention and Consumer Protection Act, 2005 U.S.C.C.A.N. S7, 2005 WL 3693183 (Apr. 20, 2005) (“2005 Presidential Statement”). As I mentioned above, the Massachusetts taxing authority acknowledges that someone may miss the filing deadline for a “reasonable cause.” Yet under the majority’s formulation, even people who have a good-faith reason for filing late — and are then excused by the state taxing authority for doing so — are mere “delinquent taxpayers,” shunned from receiving a bankruptcy discharge. While the 2005 reforms certainly sought to avert abuses that had been occurring in the bankruptcy system, I find it presumptuous to conclude that well intentioned people who file their taxes one day late — with no way to anticipate that 'bankruptcy would be coming down the pipeline a whole two years later — are the people trying to “commit fraud” or “game the system.” See 2005 Presidential Statement. I am further convinced that Congress’s focus was likely on bad faith, as opposed to mere timing, because the hanging paragraph expressly allows discharge for § 6020(a) returns, but not § 6020(b) returns, despite the fact that both are, by their nature, filed late — as the majority concedes, “the basic difference between sections 6020(a) and (b) [is that] the latter is prepared without the taxpayer’s assistance and sometimes as a result of the taxpayer’s willful fraud.” It seems to me that in light of the public policy behind the bankruptcy code and Congress’s decision not to specifically create a per se rule barring late-filed returns from being dis-chargeable, we cannot just write one in.
Given the state of the caselaw in 2005, the most sensible explanation for Congress’s addition of the provision was to elucidate that regardless of who prepared a return — or when — if the document a debtor filed would no longer be considered a “return” because the state won’t accept it as one, the debtor can’t just turn around and file a tax form solely for the purpose of discharging those taxes during bankruptcy. This interpretation of the law is further supported by Congress’s choice, in 2005, to maintain the very safeguard that was already built into the statute to help prevent that kind of problem from arising: “the requirement of a two-year waiting period after filing a late return but before seeking discharge prevents a debtor who has ignored the filing requirements of the Internal Revenue Code from waiting until the eve of bankruptcy, filing a delayed but standard tax return form, and seeking discharge the next day.” In re Hindenlang, 164 F.3d at 1032. Considering the purpose of the bankruptcy code, it is beyond me how — or why — the majority would assume, without textual or other justification, that “it is more plausible that Congress intended to settle the dispute over late filed tax returns against the debtor.... ”
In my view, the most sensible interpretation of Subsection (ii). and the hanging paragraph, when considered in concert, is that a return that does not comply with state filing requirements (and thus will not be accepted by the state as a return when it is filed) does not count as a “return,” and so those taxes cannot be discharged. In order to prevent people from filing late returns solely for the purpose of discharging their taxes in bankruptcy, the debtor may only discharge if he filed for bank *19 ruptcy two years after he filed his late return. This reading aligns with the plain text (including Congress’s choice to retain Subsection (ii) in its entirety), the historical context of the statute, and the public policy reasons for enacting the bankruptcy code. The majority, ignoring blatant textual ambiguities and judicial precedent, instead opts to create a per se restriction that is contrary to the goal of our bankruptcy system to provide, as the former President put it in 2005, “fairness and compassion” to “those who need it most.”
Ultimately, this continued confusion may be Congress’s problem to fix. In the meantime, debtors who legitimately resort to bankruptcy when they reach wit’s end should not be punished for the lack of clarity that persists in the very laws enacted to help them — or for the majority’s implicitly articulated viewpoint that a financially strapped person who misses a deadline is trying to work a runaround.
I respectfully dissent.

. From now on, I’ll refer to 11 U.S.C. § 523(a)(l)(B)(ii) as "Subsection (ii).”

. The hanging paragraph’s definition of "return” applies to the entire 11 U.S.C. § 523(a). See 11 U.S.C. § 523(a)(*).

. The majority makes much ado about the fact that the debtors in this case never paid their back taxes. It seems obvious to me that when Congress drafted the bankruptcy statute, it anticipated that someone seeking to discharge a debt in bankruptcy never actually paid the money. Otherwise, he wouldn’t have any debt to discharge.

. Confusingly, the majority admits that even under its interpretation of the statute, “the term 'applicable filing requirement’ may acquire vagueness at the outer boundaries of its possible application.” As an example, the majority suggests that it is unclear whether a failure to properly staple documents, even though technically an "applicable filing requirement,” would render the taxes deriving therefrom non-dischargeable. The majority goes on, however, to answer its own hypothetical by later concluding that “any type of return not filed in accord with applicable filing requirements in not a 'return’ under our reading of the statute.”

.Mass. Gen. L. c. 62C, § 33(a) provides:
If any return is not filed with the commissioner on or before its due date or within any extension of time granted by him, there shall be added to and become a part of the *13 tax, as an additional tax, a penalty of one per cent of the amount required to be shown as the tax on such return for each month or fraction thereof during which such failure continues, not exceeding, in the aggregate, twenty-five per cent of said amount.

. Section 6020(a) allows the IRS to prepare a federal return for someone who fails to do so on his own, but still consents to providing the IRS with the information it needs to prepare the return itself. It provides:
If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to dis *14 close all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.
26 U.S.C. § 6020(a).

. While § 6020(a) does not specifically discuss filing deadlines, I think it fair to presume that if a person failed to file a return on his own, he missed the filing deadline.

. In its attempt to refute my interpretation of the word "includes,” the majority concludes that in addition to § 6020(a) returns, "all sorts of returns (such as Form 1040s) that satisfy their respectively applicable filing requirements” count as "returns.” This logic is circular. Of course a return that satisfies "applicable filing requirements” satisfies "applicable filing requirements.” The majority’s response still fails to address why we should read into the statutory language that late-filed returns, generally, are not considered "returns,” even though Congress wrote into the statute an example of a specific type of late-filed return that qualifies.

.Section 6020(b) permits the IRS to execute a return for someone who either failed to file, or filed a "false or fraudulent return,” even if that person did not cooperate and/or did not sign the return the IRS prepared. It provides:
If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
26 U.S.C. § 6020(b)(1).

. We do not appear to have ever formally adopted Beard, but prior to 2005, courts in our province applied or considered it to try to figure out what constituted a "return” for purposes of 11 U.S.C. § 523(a). See, e.g., In re Mulcahy, 260 B.R. 612, 615-16 (Bankr.D.Mass.2001); In re Pendergast, 510 B.R. 1, 9 (B.A.P. 1st Cir.2014) (reiterating its previous holding that " § 523(a)(*) replaces the Beard test”).