# United States Court of Appeals
## For the First Circuit

No. 14-1328

IN RE: BRIAN S. FAHEY,

Debtor

BRIAN S. FAHEY,

Appellant,

v.

MASSACHUSETTS DEPARTMENT OF REVENUE,

Appellee.

No. 14-1350

IN RE: TIMOTHY P. PERKINS,

Debtor

TIMOTHY P. PERKINS,

Appellant,

v.

MASSACHUSETTS DEPARTMENT OF REVENUE,

Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

No. 14-9002

IN RE: ANTHONY M. GONZALEZ,

Debtor

———————————————

ANTHONY M. GONZALEZ,

Appellee,

v.

MASSACHUSETTS DEPARTMENT OF REVENUE,

Appellant.

———————————————

No. 14-9003

IN RE: JOHN T. BROWN,

Debtor

———————————————

JOHN T. BROWN,

Appellee,

v.

MASSACHUSETTS DEPARTMENT OF REVENUE,

Appellant.

———————————————

APPEALS FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

———————————————

Before
Torruella, Thompson, and Kayatta,
Circuit Judges.

———————————————

Celine E. Jackson, Counsel to the Commissioner, Massachusetts Department of Revenue, with whom Jeffrey S. Ogilvie, Counsel to the Commissioner, Amy A. Pittner, Commissioner, Massachusetts Department of Revenue, Martha A. Coakley, Massachusetts Attorney General, Daniel J. Hammond, Assistant Attorney General, Kevin W.

Brown, Special Assistant Attorney General, were on brief, for Massachusetts Department of Revenue.

Andrew L. Barrett for appellant Brian S. Fahey.

Carl D. Aframe, with whom Aframe & Barnhill, PA, was on brief, for appellant Timothy P. Perkins.

Marques C. Lipton, with whom Law Office of Nicholas F. Ortiz, P.C., was on brief, for appellees Anthony M. Gonzalez and John T. Brown.

Tara Twomey, National Consumer Bankruptcy Rights Center, Joanne Mulder Naqjee, Joel Peter-Fransen, Shane Mulrooney, and Kirkland & Ellis LLP, on brief for National Association of Consumer Bankruptcy Attorneys, amicus curiae in support of appellants Brian S. Fahey and Timothy P. Perkins.

---

February 18, 2015

---

**KAYATTA, Circuit Judge**.  The four bankruptcy appeals before us pose a single question of statutory interpretation: whether a Massachusetts state income tax return filed after the date by which Massachusetts requires such returns to be filed constitutes a "return" under 11 U.S.C. § 523(a) such that unpaid taxes due under the return can be discharged in bankruptcy.  For the reasons set forth below, we conclude that it does not.

## I. Background

The facts in each of the four cases now on appeal are undisputed.  John Brown, Brian Fahey, Anthony Gonzalez, and Timothy Perkins (the "debtors") all failed to timely file their Massachusetts income tax returns for multiple years in a row.  This failure would not be a problem for them in these bankruptcy proceedings, but for the fact that they also failed to pay (either timely or otherwise) their taxes to the Massachusetts Department of Revenue.  Eventually, each debtor filed his late tax returns, but still failed to pay all taxes, interest, and penalties that were due.  More than two years later, they filed for Chapter 7 bankruptcy.  The debtors seek a ruling that their obligation to pay the taxes they failed to pay is dischargeable.[1]  The Department argues for the opposite result; it contends unpaid taxes for which no return was timely filed by the Commonwealth's statutory deadline

---

[1] Although the debtors did not each make identical arguments in their briefs or at oral argument, we attribute their contentions to "the debtors" collectively.

-2-

fit within an exception to discharge under 11 U.S.C. § 523(a)(1)(B)(i).

The procedural postures of these four cases are described in detail in the Bankruptcy Appellate Panel ("BAP") and district court opinions that gave rise to these appeals. Perkins v. Mass. Dep't of Revenue, 507 B.R. 45, 46-47 (D. Mass. 2014); In re Gonzalez, 506 B.R. 317, 318-23 (B.A.P. 1st Cir. 2014); In re Brown, B.A.P. No. MW 13-027, 2014 WL 1815393, at *1-5 (B.A.P. 1st Cir. Apr. 3, 2014). In brief, the bankruptcy courts below split three to one in favor of the debtors, the BAP sided with the debtors in the two cases appealed to the BAP, and the district court granted summary judgment to the Department in the two cases appealed to the district court.

## II. Discussion

### A. Standard of Review

Since no material facts are disputed and the issue before us turns entirely upon an interpretation of law, our review is plenary. Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 323 (1st Cir. 2008); Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997).

### B. Legal Background

Section 727 of the Bankruptcy Code instructs the court to grant a debtor a discharge from his debts in a Chapter 7 bankruptcy proceeding. See 11 U.S.C. § 727. This rule is subject to several

-3-

exceptions.  In particular, 11 U.S.C. § 523(a)(1) controls whether unpaid taxes are dischargeable in bankruptcy.  It provides, in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
> > (1) for a tax or a customs duty--
> > . . .
> > (B)  with  respect  to  which  a  return,  or equivalent report or notice, if required--
> > > (i) was not filed or given; or
> > > (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

11 U.S.C. § 523(a)(1)(B)(i)-(ii).  In other words, a tax is not dischargeable if the debtor failed to file a return, or if--perhaps anticipating bankruptcy--he filed the return late and within two years of his bankruptcy petition.

Looking solely at the foregoing language, and using a common notion of what a "return" is, one could easily conclude that any return filed after the due date but more than two years before a bankruptcy filing would place the tax due under that return outside the section 523(a)(1) exception, and thus within the broad category of dischargeable debts.  Prior to 2005, courts nevertheless attempted to fashion a definition of "return" that prevented debtors from relying on "bad faith" returns, or returns filed only after the taxing authority actually issued an assessment for taxes due in the absence of a tax return.  See generally

Moroney v. United States (In re Moroney), 352 F.3d 902, 905-06 (4th Cir. 2003) (providing examples of courts that determined late tax returns "filed after an involuntary assessment do not serve the purposes of the tax system, and thus rarely, if ever, qualify as honest and reasonable attempts to comply with the tax laws").

In 2005, Congress decided to define "return" on its own when it passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), making numerous revisions to section 523. Pub. L. No. 109-8, 119 Stat. 23 (2005). Among the BAPCPA's changes was the insertion of a "hanging paragraph," denoted as section 523(a)(*), at the end of section 523(a). It provides:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).[2]

---

[2] Section 6020(a) returns are allowed only at the I.R.S.'s request and require the taxpayer's cooperation, while returns filed under section 6020(b) do not involve assistance by the taxpayer and may involve willful fraud. Compare 26 U.S.C. § 6020(a) with 26 U.S.C. § 6020(b).

So the question now presented is a question of statutory interpretation: Is a Massachusetts tax return filed after the due date for such returns a "return" as defined in section 523(a)(*) so that the tax due under that return remains dischargeable?[3]

## C. Analysis

Read together, the hanging paragraph's definitional language and the "applicable" Massachusetts law control our decision. Under the hanging paragraph, for a document, whatever it may be called, to be a "return," it must "satisf[y] the requirements of applicable nonbankruptcy law (including applicable filing requirements)." So the question is whether timely filing is a "filing requirement" under Massachusetts law. The answer is plainly yes.

As the Massachusetts Supreme Judicial Court has held for state tax law purposes, "[t]he general rule of construction is that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." Comm'r of Revenue v. AMIWoodbroke, Inc., 634 N.E.2d 114, 115 (Mass. 1994) (citing O'Sullivan v. Sec'y of Human Servs., 521 N.E.2d 997, 1000 (Mass. 1998)). Mass. Gen. Laws ch. 62C, § 6(c) ("section

---

[3] At oral argument, the attorney for Gonzalez and Brown raised the point that even if a late filed return is not a return, it may qualify as an "equivalent report or notice" under section 523(a)(1)(B). Since this argument was not preserved in the record by any of the four debtors or briefed on appeal to this Court, we do not consider it here. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

6(c)") states that "[e]xcept as otherwise provided, [income tax returns] shall be made on or before the fifteenth day of the fourth month following the close of each taxable year." None of the exceptions that "otherwise provide[]" are applicable here.[4] This command that returns "shall" be made by the due date certainly seems like a "filing requirement." See Black's Law Dictionary (10th ed. 2014) (defining "shall" as "a duty; more broadly, is required to[;] the mandatory sense that drafters typically intend and that courts typically uphold"). And another section of the Massachusetts tax code makes plain that it is so viewed. See Mass. Gen. Laws 62C, § 32(a) ("section 32(a)") ("Taxes shall be due and payable at the time when the tax return is required to be filed."). Accordingly, under this straightforward reading of Massachusetts law, a return filed after the due date is a return not filed as required, i.e., a return that does not satisfy "applicable filing requirements."

The two other circuits to have decided this issue, albeit construing other jurisdictions' "applicable" filing deadlines,

---

[4] The Department points us to two statutory provisions that give meaning to the phrase "[e]xcept as otherwise provided." Mass. Gen. Laws ch. 30, § 24 (as amended 2013) authorizes acts that must be performed on a Saturday, Sunday, or legal holiday to be performed on the next business day. And Mass. Gen. Laws ch. 62C, § 19 (as amended 1985) allows the tax commissioner to "grant a reasonable extension of time for filing any return, provided that the taxpayer . . . files a tentative return . . . and pays therewith the amount of tax reasonably estimated to be due." The debtors do not argue that these provisions, or any other law or regulation, "otherwise provided" a due date for their filings.

reached the same conclusion. The Tenth Circuit recently found returns filed late under the Internal Revenue Code ("I.R.C.") not to be returns within the meaning of the hanging paragraph. Mallo v. Internal Revenue Service (In re Mallo), Nos. 13-1464, 13-1488, 2014 WL 7360130, at *6 (10th Cir. Dec. 29, 2014) (explaining, in reference to the I.R.C.'s deadline for income tax returns, that "the phrase 'shall be filed on or before' a particular date is a classic example of something that must be done with respect to filing a tax return and therefore, is an 'applicable filing requirement'"). Similarly, the Fifth Circuit determined that a debtor's failure to comply with a Mississippi law stating that returns "shall be filed on or before April 15th" meant that the returns did not satisfy applicable filing requirements under the hanging paragraph's definition. McCoy v. Miss. State Tax Comm'n (In re McCoy), 666 F.3d 924, 928, 932 (5th Cir. 2012). And at least one other circuit court judge, in dictum, predicted such a result. In re Payne, 431 F.3d 1055, 1060 (7th Cir. 2005) (Easterbrook, J., dissenting) ("After the 2005 legislation, an untimely return can not lead to a discharge--recall that the new language refers to 'applicable nonbankruptcy law (including applicable filing requirements).'").

The debtors nevertheless argue that the hanging paragraph's language is not quite so clear as to dictate our holding. Perhaps the term "applicable filing requirement" may

acquire vagueness at the outer boundaries of its possible application. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 31-32 (2012) (explaining that vagueness is present when a phrase's "unquestionable meaning has uncertain application to various factual situations"). For example, is an instruction on an official form that the filer not staple the return together, or staple the check to the return, an "applicable filing requirement"? However one might answer that question, we do not see how there is any room for reasonable argument that, as a matter of plain language, a Massachusetts law setting the date when a tax return "is required to be filed" is somehow not a "filing requirement."

In nevertheless describing the statute as materially ambiguous and our reading of it contrived, the dissent relies on the premise that when a statute states that the universe of X "includes" Y, one normally presumes that Y is merely an example of what is in X, and that X includes more than Y. Slip Op. at 30. The dissent errs, though, in claiming that our interpretation fails to satisfy this premise. The dissent makes this error by presuming that the universe defined by the statute is "late-filed returns that count as returns," Slip Op. at 30, and that section 6020(a) returns (and "similar" state or local law returns) are therefore simply examples of a wider array of permitted late filed returns. The statute neither says nor implies any such thing. Rather, the

statute provides that a "return" includes a "return prepared pursuant to section 6020(a) . . . or similar State or local law." So one presumes only that a "return" includes more than these few types of returns. And it plainly does: it includes all sorts of returns (such as Form 1040s) that satisfy their respectively applicable filing requirements.

Similarly, the dissent errs in claiming that our reading of the statute "means that conversely, a section 6020(b) return would be the only type of return that is not a return." Slip Op. at 31. This is plainly not so--any type of return not filed in accord with applicable filing requirements is not a "return" under our reading of the statute. The returns at issue in this case are a notable demonstration that section 6020(b) returns are not the only ones that are not returns under the statute.

Widening the scope slightly, debtors point to the language of section 523(a)(1)(B)(ii) ("the two-year provision"), which clearly implies that there can be a "return" that is filed within two years "after the date on which such return . . . was last due."[5] So the hanging paragraph cannot be read as entirely excluding the possibility that a late return can also be a "return." Grasping onto this point, the debtors contend (and the

---

[5] The purpose of the two-year provision is apparently to prevent debtors from utilizing bankruptcy filings as a way of avoiding their overdue tax obligations. In re Payne, 431 F.3d at 1059.

-10-

BAP agreed) that our interpretation would "vitiat[e] in its entirety" the two-year provision, rendering it "superfluous." See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and internal quotation marks omitted)); Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 66 (1st Cir. 2011) (quoting TRW Inc. for the same proposition).

The defect in this argument is that the hanging paragraph itself carves out an exception from its general rule, deeming one type of late return to be a return. It specifies that "a return prepared pursuant to section 6020(a) . . . or similar State or local law" qualifies as a "return," while those prepared pursuant to section 6020(b) do not. 11 U.S.C. § 523(a)(*). Section 6020(a) and (b) can both be invoked when a taxpayer "fails to make" a proper return, including situations where the taxpayer is late in filing a return to the I.R.S. See McCoy, 666 F.3d at 928-29. Therefore, a late tax return, if prepared in compliance with section 6020(a) and filed within two years of the bankruptcy petition, is still a return (and the tax due thus dischargeable), notwithstanding its failure to meet the otherwise "applicable filing requirement" of a mandatory deadline. While section 6020(a) may only apply in a small minority of cases, the fact that a late

-11-

filed section 6020(a) return can still qualify as a "return" for section 523(a) purposes means that the two-year provision still has a role to play if the hanging paragraph's plain meaning controls.

The I.R.S.'s Chief Counsel has referred to the number of section 6020(a) returns as "minute" and in 2010 took the position that the safe harbor created by it was "illusory" because taxpayers have no right to demand a return under the provision. I.R.S. Chief Couns. Notice CC-2010-016 at 2-3 (Sept. 2, 2010). We accept the claim that such returns are rare, and are allowed only at the I.R.S.'s behest. It hardly follows, though, that the safe harbor expressly created for such returns is illusory. In fact, this "narrow safe harbor," hypothetically described by the district court below in the Perkins case, was utilized by a debtor in a recent bankruptcy case where the bankruptcy court was bound by the reading of section 523(a)(*) that the Department urges here. See In re Kemendo, 516 B.R. 434, 438 (Bankr. S.D. Tex. 2014). In that case, the I.R.S. had prepared a tax return with information provided by the taxpayer, in accordance with section 6020(a). Id. at 438. More than two years later, the taxpayer filed for bankruptcy. Id. at 438-39. The bankruptcy court found that the taxpayer's delinquent tax debt had been properly discharged. Id. In short, reading the hanging paragraph as generally excluding returns filed after the date when applicable law requires them to be filed does not conflict with the implication of section

-12-

523(a)(1)(B)(ii) that there can be a late return, either notionally or in practice.

The dissent takes a different tack, deeming it "absurd" to think that Congress would allow a discharge of taxes due under a section 6020(a) return prepared years after the due date, but not under a Massachusetts return that is one day late. We see no absurdity. Section 6020(a) is a tool for the I.R.S., invoked solely at its discretion, when it decides obtaining help from the late filing taxpayer is to the I.R.S.'s advantage. That Congress left the I.R.S. a carrot to offer a taxpayer in such infrequent cases does not mean that it was absurd for Congress not to extend this carrot categorically to large numbers of other late filers.

But, say the debtors, our reading of the hanging paragraph still renders unnecessary its last clause, stating that the term "return" does not include "a return made pursuant to [section 6020(b)] or a similar State or local law." The debtors are correct on this point. Nevertheless, we do not see this as the type of redundancy that invokes any effective application of the doctrine that we try to read statutes so that no section is superfluous. Here, in context, it simply appears that in creating an exception for section 6020(a), the drafters made clear (desiring a belt and suspenders) that they were not including its companion

-13-

section 6020(b).[6]  Whatever one thinks of this redundancy, it offers too little to parry the force of the observation that a requirement to file on time is a filing requirement.  See In re McCoy, 666 F.3d at 931.

Moreover, were we to adopt the debtors' position that a law requiring compliance with a filing deadline is not a filing requirement, we would be left without any textual basis for distinguishing those filing requirements that count from those that do not.  Instead--and debtors and the dissent are frank about this--we would be back to tinkering with subjective and conflicting judge-made rules.  In that respect, we would render the principal thrust of the hanging paragraph to be largely of no effect.  Of course, the debtors say that this is what Congress wanted, simply seeking to "confirm" pre-existing case law.  But, as we discuss in greater detail later in this opinion, there was no such uniform rule in the case law to which the language in the hanging paragraph could be read as referring.  Cf. In re Mallo, 2014 WL 7360130, at *10 ("If Congress intended to define a return through application of the Beard test or some other substantial compliance doctrine, rather than by a taxpayer's compliance with the applicable filing

---

[6]  The distinction makes sense when we consider the basic difference between sections 6020(a) and (b) because the latter is prepared without the taxpayer's assistance and sometimes as a result of the taxpayer's willful fraud.

-14-

requirements contained in the Tax Code, Congress [would not have added] the phrase 'including applicable filing requirements.'").

The debtors also seek support in the Massachusetts laws and regulations bearing on the meaning of "return." They point out that in Massachusetts, a pre-assessment delinquent return is treated the same as any other return.[7] This is not exactly so, however, as Massachusetts imposes a penalty on any taxpayer who does not file his return by the date required. See Mass. Gen. Laws ch. 62C, § 33 ("Late returns; penalty; abatement").[8]

Relatedly, the debtors contend that the Commonwealth's own definition of "return" lacks a timeliness element. This, too, is not exactly so. The Massachusetts Code of Regulations defines a return as "a taxpayer's signed declaration of the tax due, if any, properly completed by the taxpayer or the taxpayer's representative on a form prescribed by the Commissioner and duly filed with the Commissioner." 830 C.M.R. 62C.26.1(2) (emphasis supplied). Webster's Third New International Dictionary gives as its first definition "in a due manner, time, or degree." Webster's Third New International Dictionary 700 (3d ed. 2002). Courts

---

[7] The Department did not issue assessments against any of the debtors.

[8] Nor need we address in this case whether a return is required to be filed by the due date if Massachusetts should deem the failure to be excused, and thus of no effect under Mass. Gen. Laws ch. 62C, § 33(f) (waiving any penalty on a showing of good cause).

-15-

consistently include a timeliness element when interpreting "duly" in other contexts. <u>See, e.g.</u>, <u>McAdams</u> v. <u>United States</u>, No. 07-164T, 2008 WL 654271, at *3 (Fed. Cl. Feb. 1, 2008) (in order for a claim to be duly filed under 26 U.S.C. § 7422, it must comply with the statutorily prescribed timeliness requirement in 26 U.S.C. § 6511(a)); <u>O'Connell</u> v. <u>United States</u>, No. 02-10399-RBC, 2004 WL 1006485, at *3 (D. Mass. Mar. 22, 2004) (same); <u>Mobil Corp.</u> v. <u>United States</u>, 52 Fed. Cl. 327, 331, 337 (Fed. Cl. 2002) (I.R.C. regulation prohibiting suit to recover wrongfully assessed taxes "until a claim for refund . . . has been duly filed" includes timeliness requirement). In sum, the debtors' invocation of Massachusetts laws and regulations does not change the result.[9]

Sensibly anticipating weak support in the statutory and regulatory language, the debtors rely with much emphasis on three other rules of statutory construction.

First, they (and the amicus curiae) implore us to find instructive the notion that exceptions to discharge should be narrowly construed in the debtor's favor, <u>Gleason</u> v. <u>Thaw</u>, 236 U.S. 558, 562 (1915); <u>Rutanen</u> v. <u>Baylis</u> (<u>In re Baylis</u>), 313 F.3d 9, 17 (1st Cir. 2002), and that the Bankruptcy Code should be read in light of its purpose to provide a fresh start to the "honest but unfortunate debtor." <u>Local Loan Co.</u> v. <u>Hunt</u>, 292 U.S. 234, 244

---

[9] We express no opinion on whether other jurisdictions' laws and regulations bearing on a tax return's timeliness qualify as "applicable filing requirements" under section 523(a)(*).

(1934) ("One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." (internal quotation marks omitted)).

Second, the debtors attempt to frame our interpretation--particularly with respect to the limitations it imposes on the two-year provision's applicability--as representing a significant change to the pre-2005 Bankruptcy Code. The debtors and the bankruptcy court below for the Brown and Gonzalez cases quote the Supreme Court in urging us to be "reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." Dewsnup v. Timm, 502 U.S. 410, 419 (1992).

Third, the debtors and amicus curiae call the result we reach here--that all late filed returns in Massachusetts are not subject to discharge in bankruptcy--"unfathomable" and its consequences "draconian" and "absurd."

Our response to the debtors' reliance on these rules of statutory construction is fourfold.

First, and most importantly, where the question is whether a Massachusetts law setting a date by which a tax return

"is required to be filed" is a "filing requirement" under Massachusetts law, we find little need--or justification--for turning to secondary principles of statutory construction.  Cf. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) ("The language before us expresses Congress' intent . . . with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary.").

Second, while the result we reach may be unfavorable towards delinquent taxpayers who are also bankrupt, there is hardly anything "unfathomable," "draconian," or "absurd" in the notion that Congress might disfavor debtors who both fail to pay their taxes and also fail to timely file the returns that would alert the taxing authority to the failure to pay.  Cf. id. at 242 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" (quoting Griffin v. Oceanic Contractors, Inc., 485 U.S. 564, 571 (1982))).

Third, application of secondary principles of statutory construction hardly cuts just one way, or as forcefully as the debtors claim.  We note in particular that the hanging paragraph, adding to the statute the key language at issue, was part of an enactment whose motivating factors were: the "recent escalation of consumer bankruptcy filings"; the "significant losses asserted to

be associated with bankruptcy filings"; to close the loopholes that "allow and--sometimes--even encourage opportunistic personal filings and abuse"; and "the fact that some bankruptcy debtors are able to repay a significant portion of their debts."  H. Comm. on the Judiciary, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, H.R. Rep. No. 109-31(I), at 3-5 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 90-92.[10]  None of these enumerated purposes align with the debtors' fall-back stance of helping the "honest but unfortunate debtor" achieve a "fresh start."[11]  And as the Supreme Court has already stated, "[t]he statutory provisions regarding nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts-- such as . . . taxes[.]  Congress evidently concluded that the creditors' interest in recovering full payment of debts . . . outweighed the debtors' interest in a complete fresh start." Grogan v. Garner, 498 U.S. 279, 287 (1991).

---

[10] There were no published committee reports explaining the hanging paragraph's purpose, and it remains true that even when a statute effectuates a change to prior law, "where the language is unambiguous, silence in the legislative history cannot be controlling."  Dewsnup, 502 U.S. at 419-20.

[11] The debtor unfriendly thrust of the BAPCPA was also manifest in its rewriting of section 523(a)(1)(B) to make it applicable "not only to the failure to file a required return, but also to the failure to file or give an 'equivalent' required 'report or notice'" corresponding to the debt. See Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 279-80 (4th Cir. 2011).

Finally, we acknowledge that straightforward application of Congress's language changes presumed practice in some bankruptcy courts (including those that ruled for three of the debtors below). That being said, the judge-made law surrounding the meaning of a "return" in section 523(a) was far from settled. Prior to the BAPCPA, and in the absence of any limiting definition of the term "return," courts used a four-part test first articulated by the United States Tax Court in Beard v. Comm'r, 82 T.C. 766, 777-78 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986), in order to determine whether a document purporting to be a return was a return for purposes of section 523(a). Courts considered a return's timeliness under the Beard test's fourth prong: whether the submitted document "represent[ed] an honest and reasonable attempt to satisfy the requirements of tax law." United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033-34 (6th Cir. 1999) (emphasis supplied); see also Colsen v. United States (In re Colsen), 446 F.3d 836, 839 (8th Cir. 2006); In re Payne, 431 F.3d at 1057; In re Moroney, 352 F.3d at 905; United States v. Hatton (In re Hatton), 220 F.3d 1057, 1060-61 (9th Cir. 2000). These cases dealt only with federal tax returns, and even within that limited context, failed to reach a consensus on the issue. The Fourth, Sixth, Seventh, and Ninth Circuits all determined that debtors who submitted their tax returns late for multiple consecutive years and then filed for bankruptcy had not satisfied

-20-

the test's fourth prong, but the bases for that conclusion varied.
See <u>In re Payne</u>, 431 F.3d at 1057-59 (expressing concern that a
chronically delinquent taxpayer was making belated filings to "set
the stage" for a discharge in bankruptcy); <u>In re Moroney</u>, 352 F.3d
at 905-06 (same); <u>In re Hatton</u>, 220 F.3d at 1061 (debtor "made
every attempt to avoid paying his taxes until the IRS left him with
no other choice"); <u>In re Hindenlang</u>, 164 F.3d at 1034 (post-
assessment returns lack utility for the I.R.S.). <u>But see</u> <u>In re</u>
<u>Colsen</u>, 446 F.3d at 839-41 (document's contents, not timeliness,
determined what constitutes a "return" for discharge purposes).

Against this background, it is more plausible that
Congress intended to settle the dispute over late filed tax returns
against the debtor (who both fails to pay taxes and fails to file
a return as required by law) than it is that Congress sought to
preserve some version of the unsettled four-pronged <u>Beard</u> test by
using language that has no reference to that case law and that
certainly suggests no four-pronged definition. Particularly
noteworthy is the fact that Congress's chosen test called for
satisfying the filing requirements of applicable law, not merely
making an "honest attempt" to do so.[12]

---

[12] This is not to reject the possibility that pre-amendment
case law, such as <u>Beard</u>, might remain viable in deciding whether a
document not purporting to be a return is an "equivalent report or
notice" under section 523(a)(1)(B). <u>See</u> <u>In re Ciotti</u>, 638 F.3d at
280-81.

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> the district court's judgment in favor of the Department in the cases of Fahey and Perkins, and we <u>reverse</u> the BAP's grant of judgment for Brown and Gonzalez.  Summary judgment shall be entered in favor of the Department for the tax years at issue because the debtors' tax liabilities were not discharged in bankruptcy as a matter of law.

<u>So ordered</u>.

**- Dissenting Opinion Follows -**

**THOMPSON, Circuit Judge, dissenting.** Our nation's bankruptcy system was built on the principle that sometimes, honest people fall on hard times. While the bankruptcy code has naturally gone through revisions and updates since its inception, that foundational philosophy has always laid at its root.

In my view, the majority is unfairly dismissive of the debtors' logical interpretation of the statutory provisions at issue. It simultaneously takes too academic and literal of an approach to its reading of one of the code's definitional provisions, leading to a result that defies common sense, while also conveniently ignoring the plain meaning of other words in the very same paragraph, in order to reach a certain outcome. It ignores the mandates of statutory construction we are obligated to follow, years of lines of caselaw upon which debtors had been relying, and the clearly stated policy reasons for Congress's imposing these statutory provisions in the first place.

Needless to say, I dissent.

## The Canons of Construction

In our de novo review, the rules we follow to interpret a statute -- including bankruptcy statutes -- are well established. First, we "look [] to the specific language at issue." In re Rudler, 576 F.3d 37, 44 (1st Cir. 2009). "If the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." Id. at 44-45 (citations and quotations

-23-

omitted).  In so doing, however, we only apply plain meaning if the statutory language is not ambiguous and would not "lead to absurd results."  Id. (citations and quotations omitted).  Thus, in this case we must initially decide whether we can enforce 11 U.S.C. § 523(a)(1)(B)(ii)[13] -- the specific statutory provision at issue -- "according to its terms," based on an assessment that the "disposition required by the text is not absurd," id. at 44 (citations and quotations omitted), and that the statute cannot be "read in more than one way," In re Thinking Machines Corp., 67 F.3d 1021, 1025 (1st Cir. 1995) (quoting United States v. Gibbens, 25 F.3d 28, 34 (1st Cir. 1994)) ("A statute is ambiguous if it can be read in more than one way.").

The majority concludes that the hanging paragraph, which Congress added to the bankruptcy statute in order to define what a "tax return" is for purposes of Subsection (ii),[14] unambiguously dictates that "a return filed after the due date is a return not filed as required," and thus, that debtors who file their Massachusetts taxes late can never benefit from Subsection (ii). As I will explain, I disagree that the hanging paragraph -- when read in concert with Subsection (ii) -- unequivocally demands that conclusion.  To the contrary, the majority's interpretation of the

---

[13] From now on, I'll refer to 11 U.S.C. § 523(a)(1)(B)(ii) as "Subsection (ii)."

[14] The hanging paragraph's definition of "return" applies to the entire 11 U.S.C. § 523(a).  See 11 U.S.C. § 523(a)(*).

-24-

hanging paragraph leads to an absurd result that cannot be reconciled simply with a strictly literal reading of the statute.

## Plain Meaning

The statute at issue provides that a debtor may not discharge a tax debt if "a return . . . if required -- (i) was not filed or given; or (ii) was filed or given after the date on which such return . . . was last due, under applicable law or under any extension, and after two years before the date of the filing of the [bankruptcy] petition[.]"[15]  11 U.S.C. § 523(a)(1)(B)(i)-(ii).

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act, making numerous and significant changes to the bankruptcy code.  As part of those 2005 amendments, Congress added the "hanging paragraph" to the end of 11 U.S.C. § 523(a), clarifying that for purposes of that subsection, a "'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)."  Significant to this appeal, Congress did not change Subsection (ii) during the 2005 amendments.

The majority hones in on the hanging paragraph's added clarification that returns must comply with a state's "applicable

---

[15] The majority makes much ado about the fact that the debtors in this case never paid their back taxes.  It seems obvious to me that when Congress drafted the bankruptcy statute, it anticipated that someone seeking to discharge a debt in bankruptcy never actually paid the money.  Otherwise, he wouldn't have any debt to discharge.

filing requirements" to be dischargeable. The majority concludes that the text of the hanging paragraph unambiguously states that if a return does not comply with <u>all</u> the state law tax return filing requirements (including the filing deadline),[16] then the taxes cannot be discharged.

The majority's logic suffers from several flaws, which I address in turn.

First, it is not obvious to me that under Massachusetts tax law, filing a return late <u>necessarily</u> means that a debtor did not comply with "applicable filing requirements," such that his return would not "satisf[y] the requirements of applicable nonbankruptcy law." As the majority concedes, a tardy return will still be accepted by the state, and the debtor's tax liability will still be assessed. <u>See</u> Mass. Gen. L. c. 62C, § 26(a) ("Taxes shall be deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of this chapter and on any amendment, correction or supplement thereof, or at the amount properly due, whichever is less, and at the time when the return is

---

[16] Confusingly, the majority admits that even under its interpretation of the statute, "the term 'applicable filing requirement' may acquire vagueness at the outer boundaries of its possible application." As an example, the majority suggests that it is unclear whether a failure to properly staple documents, even though technically an "applicable filing requirement," would render the taxes deriving therefrom non-dischargeable. The majority goes on, however, to answer its own hypothetical by later concluding that "any type of return not filed in accord with applicable filing requirements in not a 'return' under our reading of the statute."

filed or required to be filed, whichever occurs later."). While late-filed returns are subject to a one-percent penalty, Mass. Gen. L. c. 62C, § 33(a),[17] even the fine is waivable on a showing of good faith:

> If it is shown that any failure to file a return or to pay a tax in a timely manner is due to reasonable cause and not due to willful neglect, any penalty or addition to tax under this section may be waived by the commissioner, or if such penalty or addition to tax has been assessed, it may be abated by the commissioner, in whole or in part.

Mass. Gen. L. c. 62C, § 33(f). I do not see how we can conclude that a late-filed return never satisfies the requirements of Massachusetts tax law if the Commonwealth not only accepts the return, but is even willing to waive the already relatively conservative penalty for filing it late.

More importantly though, even if we assume, as the majority does, that timely filing is generally a necessary component of a "return" under Massachusetts tax law, we still cannot draw the majority's ultimate conclusion that late filers can never discharge

---

[17] Mass. Gen. L. c. 62C, § 33(a) provides:

> If any return is not filed with the commissioner on or before its due date or within any extension of time granted by him, there shall be added to and become a part of the tax, as an additional tax, a penalty of one per cent of the amount required to be shown as the tax on such return for each month or fraction thereof during which such failure continues, not exceeding, in the aggregate, twenty-five per cent of said amount.

their Massachusetts tax debts under 11 U.S.C. § 523(a). Subsection (ii) -- which Congress chose not to alter during its 2005 amendments -- continues to provide a discharge exception for people who filed their taxes late, so long as those debtors did not file within the two years just prior to filing for bankruptcy. See In re Weinstein, 272 F.3d 39, 43 (1st Cir. 2001) (noting that when two statutory provisions are "meant to work in concert," to discern the plain meaning of the provision at issue, we must analyze both, as one statutory provision cannot be read in isolation). As the debtors appropriately urge, there would be no point in leaving in Subsection (ii) -- the specific exception that deals with late filers -- if Congress meant for the hanging paragraph to penalize everyone who misses filing deadlines. As the majority concedes, we should not, when we can avoid it, construe statutes in a way that allows a "clause, sentence, or word" to be "superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001); see also Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.") (citation and quotations omitted).

So how do we reconcile this discrepancy (i.e., ambiguity) that arises within the statute? The correct answer is to assess what the legislature likely meant when it wrote the statute -- a step the majority incorrectly assumes it can skip, based on its

-28-

half-reading of the statutory provisions it was required to consider. See In re Weinstein, 272 F.3d at 44 (noting that a "conflict between two provisions of [a] statute -- a conflict with which neither provision deals expressly . . . provides a reason to move beyond the text and to examine a statute's legislative history and apparent purpose").  Instead of taking on its required task, the majority, in an attempt to resolve this matter solely on the plain text, glosses over the ambiguity by concluding that Subsection (ii) is not a superfluous clause because one type of person would still benefit from it -- the people who filed a return pursuant to 26 U.S.C. § 6020(a) (or a comparable state or local law).[18]

As the majority notes, the hanging paragraph provides:

> ["Return"] includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, . . . but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

---

[18] Section 6020(a) allows the IRS to prepare a federal return for someone who fails to do so on his own, but still consents to providing the IRS with the information it needs to prepare the return itself.  It provides:

> If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a).

11 U.S.C. § 523(a)(*). So, the majority concludes, Subsection (ii) retains some usefulness because § 6020(a) returns (even if they are filed late), can still be discharged under Subsection (ii).

The majority's logic on this point is off for a number of reasons, two of which relate to plain language interpretation.

For one, the text of the hanging paragraph does not, as the majority concludes, dictate that § 6020(a) returns are the only type of late-filed returns that count as "returns." The hanging paragraph provides that a return "includes a return prepared pursuant to section 6020(a)." (Emphasis added). The majority asks us to assume that Congress, in its use of the word "includes," intended for the exception to apply only to § 6020(a)-type returns.

I am perplexed as to how the majority reaches this contrived extrapolation. Congress's use of the word "includes" connotes that § 6020(a) returns and their state or local law equivalents are mere examples of returns that would still comply with "applicable filing requirements," despite the fact that the taxpayer did not meet the filing deadline.[19] If Congress intended the outcome espoused by the majority, it would have used different language (e.g., "is limited to") -- not the word "includes."[20]

---

[19] While § 6020(a) does not specifically discuss filing deadlines, I think it fair to presume that if a person failed to file a return on his own, he missed the filing deadline.

[20] In its attempt to refute my interpretation of the word "includes," the majority concludes that in addition to § 6020(a) returns, "all sorts of returns (such as Form 1040s) that satisfy

In a similar vein, the hanging paragraph also denotes that a "return" "does not include a return made pursuant to section 6020(b) of the Internal Revenue Code . . . or a similar State or local law."[21] Applying the majority's (incorrect) definition of the word "includes," then, means that conversely, a § 6020(b) return, (or its state or local law equivalent) would be the only type of return that is not a return. But as the bankruptcy court below put it, "[i]f all late-filed returns except § 6020(a) returns are not returns[,] there is no need to state that § 6020(b) returns are not returns." The majority cursorily writes off this curiosity as a mere "redundancy" in the statute, failing to substantively address

_____

their respectively applicable filing requirements" count as "returns." This logic is circular. Of course a return that satisfies "applicable filing requirements" satisfies "applicable filing requirements." The majority's response still fails to address why we should read into the statutory language that late-filed returns, generally, are not considered "returns," even though Congress wrote into the statute an example of a specific type of late-filed return that qualifies.

[21] Section 6020(b) permits the IRS to execute a return for someone who either failed to file, or filed a "false or fraudulent return," even if that person did not cooperate and/or did not sign the return the IRS prepared. It provides:

> If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

26 U.S.C. § 6020(b)(1).

why the absurd conclusion we must draw from its reading of the statute does not require consideration of what Congress actually meant when it added the § 6020 language to the statute.

Second, allowing § 6020(a) returns, but not other late-filed returns, to be dischargeable leads to another preposterous result. Section 6020(a) returns result from a taxpayer's failure to file a federal tax return. Under the majority's formulation, then, the scofflaw who sits on his hands at tax time, doesn't bother to file a return, and then, after getting caught, cooperates with the authorities and lets the government file the substitute return for him, would be the only late filer who would be allowed to discharge his tax debt. The person who files his return one day late -- which the state then accepts -- would not be permitted to discharge, regardless of the reason for the tardiness.

The majority responds that § 6020(a) "is a tool for the IRS, invoked solely at its discretion, when it decides obtaining help from the late filing taxpayer is to the IRS's advantage." And so, the majority contends, "[t]hat Congress left the IRS a carrot to offer a taxpayer in such infrequent cases does not mean that it was absurd for Congress not to extend this carrot categorically to large numbers of late filers." But the Massachusetts taxing authority, like the IRS, also has the discretion to accept late-filed materials from a taxpayer (without imposing a penalty), presumably because it, too, would prefer not to start from scratch.

Further, the majority offers no authority to support its assumption that Congress was concerned about a rash of people running to the courthouse to discharge their tax debts. A theme I harp on throughout this dissent, we cannot put words in Congress's mouth. Finally, if Congress did provide some indication that it was seeking to prevent "large numbers" of late filers from attempting to discharge, the relevant statistic to look at would be how many late filers -- of the § 6020(a) variety or otherwise -- would actually seek relief from Subsection (ii), were it available to them, as opposed to how many people, theoretically, file their taxes late.

Given the absurdity of the majority's outcome, and the other textual ambiguities I described above, I disagree with my colleagues that we can avoid delving into legislative intent. I tackle that analysis next.

## Legislative Intent

In dicta, the majority rejects the debtors' arguments regarding the legislative intent behind Subsection (ii) and the hanging paragraph. I disagree with this portion of the majority's analysis, as well as its ultimate disposition.

### The Caselaw

In trying to discern legislative intent, we look to the historical context of the statute (i.e., prior caselaw), the legislative history of the statutory provision, and the policy underlying the statute. In re Weinstein, 272 F.3d at 44-46. So

-33-

first, we must "consider . . . the context of the statute in bankruptcy caselaw." Id. This task requires a brief recap of the history of Subsection (ii) and the addition of the hanging paragraph.

Prior to 2005, the bankruptcy code did not define "return" for purposes of Subsection (ii). Many courts, left to their own devices to figure out what constituted a "return," ended up adopting what's been coined as the "Beard test," a four-part standard formulated by the Tax Court for determining whether a document filed with the IRS qualified as a federal tax return. Under the Beard inquiry, a document qualified as a tax return if: (1) it purported to be a return; (2) was signed under penalty of perjury; (3) contained information sufficient to determine tax liability; and (4) was an honest and reasonable attempt to satisfy the tax law requirements. Beard v. Commissioner, 82 T.C. 766 (1984), aff'd per curiam, 793 F.2d 139 (6th Cir. 1986). See also In re Colsen, 446 F.3d 836, 839 (8th Cir. 2006); In re Payne, 431 F.3d 1055, 1057 (7th Cir. 2005); In re Moroney, 352 F.3d 902, 905 (4th Cir. 2003); In re Hatton, 220 F.3d 1057, 1060-61 (9th Cir. 2000); In re Hindenlang, 164 F.3d 1029, 1033-34 (6th Cir. 1999) (all adopting Beard test).[22]

_____

[22] We do not appear to have ever formally adopted Beard, but prior to 2005, courts in our province applied or considered it to try to figure out what constituted a "return" for purposes of 11 U.S.C. § 523(a). See, e.g., In re Mulcahy, 260 B.R. 612, 615-16 (Bankr. D. Mass. 2001); In re Pendergast, 510 B.R. 1, 9 (B.A.P. 1st

-34-

Many courts ended up grappling with the fourth prong. Some tried to figure out whether filing a return late counted as an "honest and reasonable attempt" to satisfy tax requirements. See, e.g., In re Payne, 431 F.3d at 1059; In re Hindenlang, 164 F.3d at 1034. Those decisions often turned on whether a return made after the government had already assessed tax liability defeated the main purpose of the filing deadline, which one court described as "spar[ing] the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability without any help from him." In re Payne, 431 F.3d at 1057. See also In re Moroney, 352 F.3d at 906 (holding that the belated acceptance of responsibility for tax liability does not constitute an honest and reasonable attempt to comply with tax laws, and that whether the eventual effort had an effect on tax liability was irrelevant); In re Hatton, 220 F.3d at 1061 (finding that belated cooperation with IRS to settle tax liabilities was not an honest and reasonable attempt to comply with tax law, and tax liability was therefore not excepted from discharge under § 523); In re Hindenlang, 164 F.3d at 1034 (applying the fourth prong of Beard, holding that a "Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code"). Other courts instead struggled with whether the "honest and reasonable" inquiry was

_____

Cir. 2014) (reiterating its previous holding that "§ 523(a)(*) replaces the Beard test").

-35-

limited to an examination of whether, as a factual matter, the tax forms themselves -- regardless of when they were eventually filed -- were filled out in good faith and with accurate information. <u>See</u>, <u>e.g.</u>, <u>In re Colsen</u>, 446 F.3d at 840-41.

Presumably aware of this confusion that was ensuing in the courts, in 2005, Congress added the hanging paragraph, clarifying specifically that substitute returns -- even though they were not prepared at the hand of the taxpayer and were filed late -- could qualify as dischargeable under 11 U.S.C. § 523(a), so long as the taxpayer cooperated with the government in preparing the return, and did not file a false or fraudulent one. While Congress also injected the language requiring returns to meet "applicable filing requirements," despite the discord among the courts, it did not specifically address whether late-filed returns in particular should be considered "returns" under the revised statutory scheme.

Since 2005, disagreement has continued to persist among the courts about how to apply the law, at least as it pertains to late-filed returns. Only two of our sister courts have answered the specific question before us, and both have reached the same conclusion as the majority here. <u>See</u> <u>McCoy</u> v. <u>Miss. State Tax Comm'n</u> (<u>In re McCoy</u>), 666 F.3d 924, 932 (5th Cir. 2012); <u>In re Mallo</u>, No. 13-1464, 2014 WL 7360130, at *12 (10th Cir. Dec. 29, 2014). But as we have said before, "[t]he numbers favoring a rule do not necessarily mean that the rule is the best one." <u>In re Atlas</u>

-36-

IT Exp. Corp., 761 F.3d 177, 182 (1st Cir. 2014). Numerous lower courts -- including two of the courts involved in the instant appeal -- have applied either a different reasoning or have reached a different outcome from the one espoused by the majority. See, e.g., In re Gonzalez, 506 B.R. 317, 318 (B.A.P. 1st Cir. 2014) (affirming bankruptcy court's holding that Massachusetts taxes were dischargeable, even though "corresponding tax returns were filed late"); In re Martin, 508 B.R. 717, 736 (Bankr. E.D. Cal. 2014) (holding that "requirements of applicable nonbankruptcy law (including applicable filing requirements) do not include a temporal restriction") (quotations omitted). Some courts, including the lower court in Mallo, have continued to apply various versions of the Beard test. See, e.g., In re Mallo, 498 B.R. 268, 281 (D. Colo. 2013); In re Rhodes, 498 B.R. 357, 360 (Bankr. N.D. Ga. 2013).

As the Supreme Court has articulated, "[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate." Dewsnup v. Timm, 502 U.S. 410, 419 (1992) (quotations omitted). Therefore, we should be "reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." Id. Given the widespread disagreement among the courts prior to and after 2005, as well as ubiquitous application of various versions of the Beard test's "honest and

reasonable attempt" requirement, I do not see how -- absent a clear congressional mandate -- we can (or should) spring upon debtors the majority's draconian rule-of-law. This very appeal, which involves four different debtors and the decisions of four different lower courts reaching two opposing outcomes, illustrates that the caselaw is far from settled, and that the courts were not generally applying a per se restriction like the one the majority has created today.

### Policy

Given the lack of legislative history on the hanging paragraph, it is also appropriate to look to the public policy behind the bankruptcy code to try to determine Congress's intent. See In re Weinstein, 272 F.3d at 46 (noting that while we "must not, of course, impose [our] own views of proper bankruptcy policy in place of those of the legislature[,] . . . an understanding of the congressional policies underlying a statute, including the Bankruptcy Code, can help to reconcile otherwise indeterminate parts of the statutory text").

The primary purpose of the bankruptcy code has always been to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934) (citation and quotations omitted); Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) ("The principal purpose of the

Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.") (citations and quotation omitted). As the Supreme Court reiterated fairly recently (and several years after the 2005 amendments were passed), a "fresh start" is a "fundamental bankruptcy concept." Schwab v. Reilly, 560 U.S. 770, 791 (2010) (citations and quotations omitted). Despite the majority's contentions, Congress made no indication that the 2005 amendments were intended to change those goals. Rather, as President George W. Bush reiterated upon signing the bill, the purpose of our bankruptcy system is to "give those who cannot pay their debts a fresh start." Presidential Statement on Signing the Bankruptcy Abuse Prevention and Consumer Protection Act, 2005 U.S.C.C.A.N. S7, 2005 WL 3693183 (Apr. 20, 2005) ("2005 Presidential Statement"). As I mentioned above, the Massachusetts taxing authority acknowledges that someone may miss the filing deadline for a "reasonable cause." Yet under the majority's formulation, even people who have a good-faith reason for filing late -- and are then excused by the state taxing authority for doing so -- are mere "delinquent taxpayers," shunned from receiving a bankruptcy discharge. While the 2005 reforms certainly sought to avert abuses that had been occurring in the bankruptcy system, I find it presumptuous to conclude that well intentioned people who file their taxes one day late -- with no way to anticipate that bankruptcy would be coming down the pipeline a whole two years later -- are the

people trying to "commit fraud" or "game the system." See 2005 Presidential Statement. I am further convinced that Congress's focus was likely on bad faith, as opposed to mere timing, because the hanging paragraph expressly allows discharge for § 6020(a) returns, but not § 6020(b) returns, despite the fact that both are, by their nature, filed late -- as the majority concedes, "the basic difference between sections 6020(a) and (b) [is that] the latter is prepared without the taxpayer's assistance and sometimes as a result of the taxpayer's willful fraud." It seems to me that in light of the public policy behind the bankruptcy code and Congress's decision not to specifically create a per se rule barring late-filed returns from being dischargeable, we cannot just write one in.

Given the state of the caselaw in 2005, the most sensible explanation for Congress's addition of the provision was to elucidate that regardless of who prepared a return -- or when -- if the document a debtor filed would no longer be considered a "return" because the state won't accept it as one, the debtor can't just turn around and file a tax form solely for the purpose of discharging those taxes during bankruptcy. This interpretation of the law is further supported by Congress's choice, in 2005, to maintain the very safeguard that was already built into the statute to help prevent that kind of problem from arising: "the requirement of a two-year waiting period after filing a late return but before seeking discharge prevents a debtor who has ignored the filing

-40-

requirements of the Internal Revenue Code from waiting until the eve of bankruptcy, filing a delayed but standard tax return form, and seeking discharge the next day."  In re Hindenlang, 164 F.3d at 1032.  Considering the purpose of the bankruptcy code, it is beyond me how -- or why -- the majority would assume, without textual or other justification, that "it is more plausible that Congress intended to settle the dispute over late filed tax returns against the debtor . . . ."

In my view, the most sensible interpretation of Subsection (ii) and the hanging paragraph, when considered in concert, is that a return that does not comply with state filing requirements (and thus will not be accepted by the state as a return when it is filed) does not count as a "return," and so those taxes cannot be discharged.  In order to prevent people from filing late returns solely for the purpose of discharging their taxes in bankruptcy, the debtor may only discharge if he filed for bankruptcy two years after he filed his late return.  This reading aligns with the plain text (including Congress's choice to retain Subsection (ii) in its entirety), the historical context of the statute, and the public policy reasons for enacting the bankruptcy code.  The majority, ignoring blatant textual ambiguities and judicial precedent, instead opts to create a per se restriction that is contrary to the goal of our bankruptcy system to provide, as the

-41-

former President put it in 2005, "fairness and compassion" to "those who need it most."

Ultimately, this continued confusion may be Congress's problem to fix.  In the meantime, debtors who legitimately resort to bankruptcy when they reach wit's end should not be punished for the lack of clarity that persists in the very laws enacted to help them -- or for the majority's implicitly articulated viewpoint that a financially strapped person who misses a deadline is trying to work a runaround.

I respectfully dissent.